# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| JOHN C. DISTEFANO, individually, a Florida resident, | ) ) ) ) |
| Plaintiffs, | ) CASE NO.: ) |
| -vs- | ) **DEMAND FOR JURY TRIAL** ) |
| NORDIC CONSULTING PARTNERS, INC., a Wisconsin corporation, | ) ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff, JOHN C. DISTEFANO, individually, ("Plaintiff" or "Mr. Distefano"), hereby files his complaint for damages against Defendant, NORDIC CONSULTING PARTNERS, INC. ("Defendant" or "Nordic"), and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for damages arising from breach of an oral contract, and in the alternatives, breach of implied contract or quantum meruit under Florida law, arising out of the theft of Plaintiff's intellectual property and consumer-centric healthcare software platform.

## THE PARTIES

2. Plaintiff, John C. Distefano, is a citizen and resident of Collier County, Florida.

3. Defendant, Nordic Global Consulting, Inc. ("Nordic"), is a Wisconsin corporation, with its principal place of business in Dane County, Wisconsin.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the parties are citizens of different states because Plaintiff John C. Distefano is a citizen of Florida, and Defendant Nordic Consulting Partners, Inc. is a citizen of Wisconsin, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over the Defendant, by virtue of the fact that Defendant serves more than two-hundred hospitals and health systems across the country with several customers in Florida. In addition, the Plaintiff used his intellectual property to build the software platform at issue mostly from his residence in Collier County, Florida. Defendant breached its contractual obligations and otherwise failed to compensate Plaintiff for his services and intellectual property in Florida for which the Defendant has retained the benefit.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the Plaintiff's

claims occurred in this judicial district and where a significant portion of the performance of the oral contract occurred and where the Plaintiff resides.

7. All conditions precedent to the institution and maintenance of this action have occurred or have been performed, completed or waived.

## FACTUAL BACKGROUND

8. As set forth below, the Plaintiff Mr. Distefano conceived a consumer-centric healthcare platform that was based on his highly successful, respected, and well-known thirty year career as an advisor and consultant in the healthcare field with the firm of Ernst & Young Global Limited ("Ernst & Young") among other professional services firms.

9. Over his career Mr. Distefano was sought out to provide advisory and consultancy services to grow businesses in the healthcare field. In 2019, Mr. Distefano retired and began developing his consumer-centric healthcare software platform (the "software platform").

10. Mr. Distefano continued to further develop and refine the details of his software platform but was looking for a company to write the code for the software.

11. Mr. Distefano first approached InComm Health Care in February 2020 to write the code under his direction and provided a live presentation explaining the consumer-centric healthcare software platform, how it works, and its value.

12. InComm at that time was not positioned to write the code for the software platform and passed on the opportunity.

13. By happenchance, Mr. Distefano was subsequently contacted by James Costanzo ("Mr. Costanzo") who was the Chief Executive Officer of the Defendant Nordic. Mr. Costanzo and Mr. Distefano had worked together over the years at Ernst & Young and other firms, and Mr. Costanzo respected Mr. Distefano's abilities as a consultant and advisor.

14. Nordic was an information technology (IT) staffing company that had hundreds of individual subcontractors that included software engineers.

15. Hospitals and other healthcare facilities from all over the country would hire Nordic to install electronic healthcare record software, which is a relatively complex undertaking, and Nordic would in turn activate a team of its subcontractors to perform the installation.

16. Mr. Costanzo was hired to grow Nordic in order to sell it to a third party. However, an IT staffing company is not relatively valuable but adding consultancy and advisory services to Nordic would substantially increase its overall value.

17. Accordingly, Mr. Costanzo on behalf of Nordic reached out to Mr. Distefano in February 2020, to build the newly formed consultancy and advisory services division for Nordic.

18. Mr. Distefano explained to Mr. Costanzo that he had retired from the advisory and consultancy business and was pursuing his life's work comprising his consumer-centric healthcare software platform.

19. Nevertheless, Mr. Distefano was interested in working as a consultant with Nordic to build the newly formed consultancy and advisory services because the software engineers of Nordic could write the code for Mr. Distefano's software platform.

20. Mr. Distefano, individually, and Nordic agreed on April 1, 2020, that Nordic would use its software engineers to write the code for Mr. Distefano's software platform and that Nordic would form a new jointly owned company with Mr. Distefano to monetize his software platform.

21. Separate and apart from the oral agreement with Nordic, Mr. Distefano's company goDesk, LLC ("goDesk") entered into a written May 2020, Subcontract Master Services Agreement and Statement of Work with Nordic. The Subcontract Agreement was for goDesk to provide advisory and consultancy services to Nordic in order to start and build Nordic's own advisory and consultancy services.

22. The subject matter of the Subcontract Agreement with goDesk does not include building a consumer-centric healthcare software platform for Nordic. Instead, the subject matter of the Subcontract Agreement is for goDesk to "provide leadership to design and execution of Nordic's Advisory Services

organization restructure" as described in the May 2020, Statement of Work of the Subcontract Agreement.

23. Moreover, goDesk does not own any intellectual property related to Mr. Distefano's software platform and was never assigned ownership of Mr. Distefano's software platform.

24. Mr. Distefano reasonably relied on the oral agreement of Nordic to have Nordic write the code for his software platform and to form a new jointly owned company to monetize the software platform together. Mr. Distefano changed his position to his detriment based on such reliance as explained below.

25. In addition, goDesk successfully built the advisory and consultancy services for Nordic during 2020 and 2021 under the terms of the Subcontract Agreement and increased the value of Nordic substantially.

26. Also, during this time, Mr. Distefano, individually, without any compensation from Nordic, was directing the building and writing of the code for his consumer-centric healthcare software platform using Nordic software engineers pursuant to the terms of the oral agreement and as authorized by Nordic.

27. In December 2021, Nordic wanted to terminate the Subcontract Agreement with goDesk and make Mr. Distefano an executive employee of Nordic so that Nordic would appear to be more stable and reputable to potential buyers of Nordic.

28. However, due to decisions being made by senior management with the financials in an effort to sell Nordic, Mr. Distefano resigned from employment a couple months later in February 2022.

29. Even after Mr. Distefano resigned from Nordic, he continued directing the building of his software platform using Nordic software engineers as requested by Nordic and pursuant to the terms of the oral agreement.

30. In June 2022, Mr. Distefano provided a proposed Operating Agreement for a new company that would be jointly owned by him individually and Nordic as orally agreed to in 2020 as his software platform was close to being operational.

31. Mr. Costanzo did not object to the terms of the Operating Agreement or ever dispute that Mr. Distefano was the owner of his software platform, which was now branded as Wellward™.

32. However, around that same time Nordic was acquired by a third party, Accrete Health Partners, in June 2022, and Mr. Costanzo stated to Mr. Distefano that the new company described in the proposed Operating Agreement would be formed by the end of the year after the dust settled from the acquisition.

33. Accordingly, Mr. Costanzo brought goDesk back onboard to Nordic through a Second Statement of Work that would run to the end of the year when the new company would be formed with Mr. Distefano as agreed to by Nordic.

34. goDesk, LLC, with Mr. Distefano as its only employee, executed the Second Statement of Work in August 2022, in anticipation of, and based on, the

conduct and representations of Mr. Costanzo that the new company jointly owned by Mr. Distefano, individually, and Nordic would be formed by the end of the year for Mr. Distefano's software platform.

35. Representations made by Mr. Costanzo included that the Second Statement of Work was part of the process of finalizing the software platform and forming the new jointly owned company to monetize Mr. Distefano's software platform.

36. The Second Statement of Work stated that goDesk was to "provide consulting services related to the platform development and commercialization efforts of the [software] platform," which was consistent with Mr. Costanzo's representations that would lead to forming a new jointly owned company to launch Mr. Distefano's software platform.

37. goDesk began providing its services under the Second Statement of Work on or about August 22, 2022.

38. In preparation for the upcoming new entity launch, Mr. Distefano personally acquired the internet domain name WellwardDigital in September, 2022. Mr. Distefano worked extensively with Nordic's Marketing leadership, Nordic's IT leadership and Nordic's external advertising firm to define the brand guidelines for the separate Wellward entity, and to design and build the Wellward website in anticipation of the spin out of the new jointly owned company.

39. Despite the promises of Mr. Costanzo to form a new jointly owned company by the end of the year for Mr. Distefano's software platform, Nordic failed to do so.

40. Subsequently, to Mr. Distefano's surprise and detriment, Mr. Costanzo sent an email on January 3, 2023, stating that "Nordic will stop further investment in developing the Wellward platform. We will shift our focus to selling Wellward in the market.... As our focus turns to sales, we need to redefine your relationship with Nordic. It is my hope that you will stay involved from a sales perspective, and I would like you to consider a 'finder's fee' or commission-based arrangement with Nordic for any clients you help us sell...."

41. A follow-up January 18, 2023, email stated that Nordic's "decision is to not put an additional agreement in place at this time... and therefore the current end date of your contract will close out the contractual relationship at this point."

42. Unclear as to whether Nordic was attempting to steal his software platform and related intellectual property, Mr. Distefano followed up to inquire as to whether there was any objection to him taking his software platform (i.e., Wellward™) to a third party.

43. Nordic's inhouse counsel responded via email, which stated:

> I just want to ensure we are on the same page: all the code, applications (e.g., Connector), schemas, flowcharts, presentations, slides, sales and marketing materials, and other materials related to [Mr. Distefano's software platform] have been developed by Nordic resources (its employees and

> independent contractors) and belong to Nordic (it is Nordic's IP that can be used only by Nordic). Also, Nordic owns the rights to the federally registered mark in Wellward.
>
> As for the idea/concept of a digital platform, you are free to pursue it (alone or with other partners), subject to you complying with your confidentiality and other obligations (e.g., not using Nordic's IP) that are outlined in your agreements with Nordic.
>
> Let me know if you have any questions. I wish you all the best on your journey!

44. The intent of Nordic to steal Mr. Distefano's software platform, intellectual property, and other related materials that he prepared was now made crystal clear.

45. As explained above, there was an oral agreement for Nordic to use its software engineers to write the code based on the concepts, materials, ideas and other intellectual property previously developed by Mr. Distefano. So, of course, Nordic resources were used to write the code for Mr. Distefano's software platform now known as Wellward.

46. Mr. Distefano agreed to let Nordic write the code for his software platform because Nordic agreed to form a jointly owned company between Nordic and Mr. Distefano, individually, that would own and monetize the software platform.

47. It is undisputable that Mr. Distefano performed his obligations under the oral agreement to provide his previously developed concepts, materials, ideas and other intellectual property (collectively, "intellectual

10

property") of his software platform to the Nordic software engineers so that they could write the code. Mr. Distefano has not been compensated for his intellectual property which is embodied by the Wellward software platform and estimated to be able to generate tens of millions of dollars in revenue and hundreds of millions in enterprise value.

48. In addition, Mr. Distefano managed, supervised, and consulted with the Nordic software engineers to write the code for his software platform, which he has never been compensated.

49. Nordic failed to perform their contractual obligations by not forming a new jointly owned company to monetize Mr. Distefano's software platform and by asserting sole ownership of "all the code, applications…, schemas, flowcharts, presentations, slides, sales and marketing materials, and other materials related to [Mr. Distefano's software platform]" in material breach of the oral agreement.

50. Moreover, Mr. Distefano could have hired software engineers from any number of sources to write the code for his software platform, but chose to use Nordic based on the terms of the oral agreement upon which Mr. Distefano reasonably relied.

51. Had Mr. Distefano known that Nordic would claim sole ownership of the code and other materials related to his software platform, he never would have agreed to have Nordic software engineers write the code or to have Nordic involved in any way with his software platform. Mr. Distefano's intellectual

property and services related to the software platform were not, and never intended, to be a "gift" to Nordic.

52. There was never any assignment of any ownership rights to Nordic of Mr. Distefano's concepts and ideas that are inextricably intertwined with the code and other materials related to the software platform. Nordic has no ownership rights to license, assign, sell, or transfer the code and other materials for the software platform to anyone.

53. The software platform belongs to Mr. Distefano including all the code, applications, schemas, flowcharts, presentations, slides, sales and marketing materials, and other materials related to his software platform.

54. Now, because Nordic is claiming sole ownership of those materials including the code, Mr. Distefano is being irreparably harmed by being forced to start over to write new code for his software platform. This is at least a two year process, which places him at a disadvantage in the marketplace, and has resulted in substantial lost business opportunities and damage to his reputation.

## COUNT I
### Breach of Oral Contract

55. This is an action against the Defendant for breach of an oral contract.

56. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 54 above, as if fully set forth herein.

57. The parties entered an oral contract during a meeting on April 1, 2020, through the offer of Mr. Distefano to bring his concepts, materials, ideas, and other intellectual property of his software platform to Nordic if Nordic would use its resources to write the code using its software engineers and form a jointly owned company that would monetize the software platform. Nordic verbally accepted Mr. Distefano's offer and the contract was formed.

58. The oral contract was not formalized due to the parties responding to pressing needs of the business and because the terms and conditions were already solidified in the parties' minds and contract performance was being completed without any disputes.

59. Nevertheless, the oral contract was evidenced by correspondence between the parties and others, telephone conversations, no less than thirteen in-person and virtual meetings, performance of the contract, and the parties' course of conduct.

60. As explained above, under the terms of the oral contract, Nordic agreed to form a jointly owned company to monetize the software platform and that was a material term that induced Mr. Distefano to work with Nordic.

61. Nordic breached the oral contract by failing to form a jointly owned company with Mr. Distefano and instead asserted sole ownership of the software platform and is monetizing the software platform, in whole or in part, for itself.

62. As a direct and proximate result of Nordic's breach of the oral contract, Plaintiff has been damaged in the nature of not receiving compensation

for his intellectual property and services in building the software platform, damage to reputation, and loss of past and future business opportunities.

63. WHEREFORE, Plaintiff is entitled to, and demands an award of compensatory damages, consequential damages, prejudgment interest, post judgment interest, court costs, and any further relief this Court deems just and proper.

## COUNT II
## Breach of Implied Contract

64. This is an action, in the alternative to Count I for breach of an oral contract, against the Defendant for breach of implied contract.

65. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 54 above, as if fully set forth herein.

66. A contract was formed between the Plaintiff and the Defendant based on their conduct. The respective conduct of the Parties proves assent to form a jointly owned company to monetize Mr. Distefano's software platform that would be written by Nordic's software engineers based on Mr. Distefano's concepts, materials, ideas, and other intellectual property.

67. As explained above, Mr. Distefano worked directly with Nordic software engineers to write the code for his software platform based on his intellectual property.

68. Nordic paid its software engineers to write the code for Mr. Distefano's software platform.

69. In June 2022, Mr. Distefano provided a proposed Operating Agreement for a new company that would be jointly owned by him individually and Nordic because his software platform was close to being operational.

70. Correspondence between the parties and others, telephone conversations, and in person meetings suggest a contract was formed to jointly monetize Mr. Distefano's software platform.

71. A contract was formed that can be inferred in whole or in part from the parties' conduct as described above.

72. Nordic breached the implied contract by failing to form a jointly owned company with Mr. Distefano and asserting sole ownership of Mr. Distefano's software platform to monetize the software platform, in whole or in part, for itself.

73. As a direct and proximate result of Nordic's breach of the implied contract, Plaintiff has been damaged in the nature of not receiving compensation for his intellectual property and services in building the software platform, damage to reputation, and loss of past and future business opportunities.

74. WHEREFORE, Plaintiff is entitled to, and demands an award of compensatory damages, consequential damages, prejudgment interest, post judgment interest, court costs, and any further relief this Court deems just and proper.

## COUNT III
## Quantum Meruit

75. This is an action against the Defendant for quantum meruit, in the alternative to Counts I and II for breach of oral contract and implied contact, respectively.

76. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 54 above, as if fully set forth herein.

77. The Plaintiff conferred a benefit on the Defendant by providing his previously developed concepts, materials, ideas, and other intellectual property to the Defendant. In addition, the Defendant received the benefit of Plaintiff managing, supervising, and consulting with the Nordic software engineers to write the code for his software platform.

78. The Defendant had knowledge of the benefits being conferred on it by the Plaintiff.

79. The Defendant has retained those benefits, and the circumstances are such that it would be inequitable for the Defendant to retain the benefits of the Plaintiff's intellectual property to be able to monetize the software platform, in whole or in part, for itself without paying fair value for it.

80. WHEREFORE, Plaintiff is entitled to, and demands an award of compensatory damages, prejudgment interest, post judgment interest, court costs, and any further relief this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John C. Distefano respectfully requests that the Court enter judgment in its favor and against the Defendant, along with an order that includes:

a. a finding that the Defendant has breached an oral contract, or in the alternatives an implied contract, or has otherwise been unjustly enriched at the Plaintiff's expense;

b. a declaration that the Plaintiff is the owner of the software platform and a permanent injunction enjoining and restraining the Defendant from using the software platform without authorization from the Plaintiff;

c. an award of compensatory damages and consequential damages including, but not limited to, loss of business opportunities as a result of Defendant's actions;

d. The grant of monetary relief to the Plaintiff in the form of an accounting and payment by the Defendant of an amount equivalent to all financial gains, profits, and advantages derived from its wrongful acts plus actual damages;

e. an award of costs, pre- and post-judgment interest as otherwise permitted under the law; and

f. such other further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

Date: <u>February 15, 2023</u>

/s/  Brian R. Gilchrist
Brian R. Gilchrist
Florida Bar No. 774065
bgilchrist@allendyer.com
Matthew G. McKinney
Florida Bar No. 385298
mmckinney@allendyer.com
**ALLEN, DYER, DOPPELT,
& GILCHRIST, P.A.**
255 S. Orange Ave., Suite 1401
Orlando, Florida 32801
Tel: 407-841-2330
Fax: 407-841-2331
*Attorneys for Plaintiff John C. Distefano*