UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN C. DISTEFANO,

     Plaintiff,

v.                           Case No.:  2:23-cv-100-SPC-NPM

NORDIC CONSULTING
PARTNERS, INC.,

     Defendant.
_____/

## OPINION AND ORDER

Before the Court is Defendant Nordic Consulting Partners, Inc.'s ("Nordic") Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) and/or to Compel Arbitration and Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 16), along with Plaintiff John C. Distefano's ("Distefano") Response in Opposition (Doc. 20).  For reasons explained below, the Court grants Nordic's Motion in part and transfers this case to the Western District of Wisconsin.

## BACKGROUND

This is a contract dispute involving the development and subsequent marketing of the healthcare software platform "Wellward."  Distefano began developing his idea for Wellward in 2019 and sought someone to write the code for the software.  In early 2020, James Costanzo ("Costanzo"), the CEO of Nordic, contacted Distefano about working as a consultant for Nordic in order

to help grow Nordic's new consultancy and advisory division.  According to Distefano, in April 2020, Distefano and Costanzo orally agreed "that Nordic would use its software engineers to write the code for [Distefano's] software platform and that Nordic would form a new jointly owned company with [Distefano] to monetize his software platform."  (Doc. 1 at 5).

The next month, Nordic and goDesk, LLC (Distefano's company) entered into a written Subcontract Master Services Agreement ("MSA") and Statement of Work ("SOW 1") with Nordic.  This was the first of three written agreements between goDesk, LLC ("goDesk"), Distefano, and Nordic.  The second agreement came into effect around December 2021, when Distefano became an employee of Nordic.  From December 2021 through August 2022—in accordance with his new status as an employee—Distefano's work was governed by an Employment Agreement ("EA").  Then around September 2022, the third agreement between the parties came into effect—a second Statement of Work ("SOW 2").  It remained in effect through the end of 2022.  The two SOWs and the MSA were executed by Distefano as a representative of goDesk.  The EA was executed by Distefano in his personal capacity.

During his employment relationships with Nordic, Distefano directed the building of Wellward using Nordic's engineers.  Even though the jointly owned Nordic-goDesk company that Distefano had envisioned had not been formed, Distefano also began working with Nordic marketing and IT to "design

and build the Wellward website" for future marketing purposes.  (Doc. 1 at 8).
In January 2023, Costanzo told Distefano that Nordic planned to stop
investing in Wellward's development and begin focusing on Wellward's
marketing.   Costanzo proposed Distefano remain "involved from a sales
perspective" and proposed possible commission-based compensation.  (Doc. 1
at 9).  But ultimately, Nordic did not extend Distefano's contractor/employment
relationship.  And when Distefano proposed taking Wellward to a third party
for further development and marketing, Nordic objected, saying that Distefano
could only "pursue the idea/concept of a digital platform subject to
confidentiality and other obligations (e.g., not using Nordic's IP) that are
outlined in [Distefano's] agreements with Nordic."  (Doc. 1 at 10).

Distefano filed suit in February 2023, alleging breach of oral contract,
breach of implied contract, and quantum meruit.  (Doc. 1).  Nordic now moves
to transfer the case pursuant to 28 U.S.C. § 1404(a) and/or to compel
arbitration or to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).[1]

## LEGAL STANDARD

"A forum-section clause may be enforced by a motion to transfer under
28 U.S.C. § 1404(a), which provides that for the convenience of parties and

---

[1] Nordic titled its Motion as requesting dismissal pursuant to Fed. R. Civ. P. 12(b)(1) (subject-matter jurisdiction).  (Doc. 16 at 1).  But Nordic's entire dismissal argument concerns personal jurisdiction (Fed. R. Civ. P. 12(b)(2)).  (Doc. 1 at 4-23).  The Court therefore reads Nordic's request for dismissal as falling under Fed. R. Civ. P. 12(b)(2).

witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Atl. Marine Constr. Co. v. United States Dist. Ct.,* 571 U.S. 49, 51 (2013) (internal quotations omitted).  When a motion to transfer pursuant to a forum selection clause is filed, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 51.  "A valid forum-selection clause should be given controlling weight in all but the most exceptional cases."  *Id.* at 63 (internal citation omitted).

"Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law." *P & S Bus. Machs., Inc. v. Canon USA, Inc.,* 331 F.3d 804, 807 (11th Cir. 2003).  A forum selection clause is "presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.,* 722 F. App'x 870, 883 (11th Cir. 2018).  There are four recognized ways in which a forum selection clause may be unenforceable: "(1) [its] formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive

the plaintiff of a remedy; or (4) enforcement of [the forum selection clause] would contravene a strong public policy." *Id.* at 883 (citing *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1296 (11th Cir. 1998)).

Generally, 1404(a) requires consideration of both "private" and "public" factors.[2]   But a valid forum selection clause alters the typical 28 U.S.C. § 1404(a) analysis in three ways: (1) "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted," (2) "a court evaluating a defendant's § 1404(a) motion to transfer . . . should not consider arguments about the parties' private interests," and (3) "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Atl. Marine Constr. Co.*, 571 U.S. at 64.

## DISCUSSION

---

[2] "Private factors" include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1331 n.6 (11th Cir. 2011) (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 (1981)). "Public factors" include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.*

Nordic moves to transfer pursuant to 28 U.S.C. § 1404(a) and/or to compel arbitration and dismiss for lack of personal jurisdiction. Nordic's argument can be summarized as follows: The MSA contains a forum selection clause which requires this dispute be in a court located in "Dane Country [sic], Wisconsin," so this case needs to be heard in Wisconsin. In the alternative, Distefano's EA contains an arbitration provision which says this dispute should be settled by binding arbitration in Madison, Wisconsin or Chicago, Illinois. And finally, if the Court disagrees with both of these arguments, this case should be dismissed for lack of personal jurisdiction because Nordic lacks sufficient ties to the state of Florida.

Distefano's argument in response can be summarized as follows: The forum selection clause in the MSA does not bind Distefano because (1) the MSA was executed by Distefano on behalf of his LLC, not executed by Distefano in his personal capacity, and (2) Distefano owns the Wellward intellectual property in his personal capacity. Additionally, neither the MSA nor the EA applies to this dispute because Wellward was not developed during Distefano's employment relationships with Nordic and/or because the development and commercialization of Wellward was subject to an oral (not written) agreement. Distefano also argues that this dispute cannot be subject to arbitration because even if the EA is otherwise applicable, it excludes IP claims from the

arbitration clause.  And finally, the Court does have personal jurisdiction over Nordic.

This motion, then, turns on the answer to the following question: What governs the current dispute—the MSA, the EA, or neither?

## A. MSA Overview and Scope

Distefano's employment relationship with Nordic was subject to four contracts: First, a Subcontract Master Services Agreement ("MSA") and Statement of Work ("SOW 1") with Nordic; then an Employment Agreement ("EA") with Nordic; then a second Statement of Work ("SOW 2").  The two SOWs and the MSA were executed by Distefano as a representative of goDesk. The EA was executed by Distefano in his personal capacity.

The MSA contains the following pertinent provisions:

**Inconsistent Terms.**   Each signed Statement of Work is incorporated into this Agreement by reference.   The Parties expressly agree that the terms and conditions of this Agreement shall control over any conflicting terms or conditions found in the Statement of Work.

**Effect of Termination** . . . The Parties' rights and obligations which by their nature survive termination of this Agreement, shall survive termination of this Agreement and/or any Statement of Work hereunder.

**Contract Property**.  Except as provided . . . below, all copyrights, patents, trade secrets or other intellectual property rights associated with any ideas, concepts, techniques, inventions, processes or works of authorship developed or created by [goDesk, LLC] or its personnel in connection with the performance or the Services under this Agreement (collectively, "Contract Property")

shall belong exclusively to Nordic and shall, to the extent applicable, be considered "work made for hire" . . . If any element or item of the Contract Property is not a "work made for hire," Subcontractor will assign, and shall cause its personnel to assign to Nordic, without any requirement or further consideration, any right, title or interest that Subcontractor and its personnel may have in such Contract Property.

**Entire Agreement.**  This Agreement . . . and any Statements of Work set forth the full and complete agreement of the Parties with respect to the subject matter hereof.   All prior agreements, correspondence, discussions and understandings of the Parties (whether oral or written) are merged herein and superseded hereby, it being the intention of the Parties that this Agreement shall serve as the complete and exclusive statement of the terms of their agreement together.

**Governing Law and Venue.**  This Agreement and all matters under this Agreement as well as any Statement of Work entered pursuant hereto shall be governed by the substantive laws of the State of Wisconsin, U.S.A., exclusive of conflict of law rules.  The sole and exclusive venue for any proceeding arising out of this Agreement shall be a competent court having jurisdiction in Dane Country [sic], Wisconsin.

Distefano argues that the MSA terminated with the execution of the EA and was never re-executed, making the forum selection clause in the MSA "not applicable." (Doc. 20 at 9).  But this MSA applies to both SOWs.  SOW 1 says it is entered into by and between Nordic and goDesk ("Subcontractor") "and is a supplement to the Subcontract Master Services Agreement by and between Nordic and Subcontractor dated as of May 18, 2020." SOW 2 contains the same language, stating that it "*is a supplement to the Subcontract Master Services Agreement by and between Nordic and Subcontractor dated as of May 18, 2020.*"  Importantly, SOW 2 also references Wellward—nineteen times in two

short pages.    (Doc. 16-5 at 2-3).    SOW 2 expressly references goDesk's obligation under the SOW to "provide consulting services related to the platform development and commercialization efforts of the Wellward platform." (Doc. 16-5 at 2).

So to recap—the MSA governs both SOWs, addresses ownership of intellectual property, constitutes the full and complete agreement of the Parties (expressly superseding any prior oral agreements), supersedes all prior agreements, and contains a forum selection clause directing litigation to occur in a court in Dane County, Wisconsin.[3]  And by its plain language, this forum selection clause is mandatory, not permissive.  *See Cornett v. Carrithers*, 465 F. App'x 841, 843 (11th Cir. 2012) ("One hallmark of a mandatory clause is the used of the imperative term 'shall,' which prescribes a 'requirement'").  Under these facts, the MSA's forum selection clause applies to Distefano's causes of action.

### B. MSA Enforceability

When a motion to transfer pursuant to a forum selection clause is filed, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Constr. Co.*, 571 U.S. at 51.  A forum selection clause is "presumptively

---

[3] The MSA's forum selection clause says "Dane *Country*, Wisconsin."  This is an error, so the Court will refer throughout this Order to Dane *County*, Wisconsin.

valid and enforceable" unless the moving party "makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Aviation One of Fla., Inc.,* 722 F. App'x at 883. The Eleventh Circuit has gone so far as to say a forum selection clause is invalid *only* when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Cornett,* 465 F. App'x at 842-43 (emphasis added).[4]

But Distefano does not argue—much less make a strong showing—that enforcement of the forum selection clause would be unfair or unreasonable. Distefano does not argue that his agreement to the forum selection clause was induced by fraud, that enforcement of the clause would deprive him of his day in court, that enforcement would deprive him of a remedy, or that enforcement would contravene public policy. And for this alone, the Court could conclude

---

[4] "Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law." *P & S Bus. Machs., Inc. v. Canon USA, Inc.,* 331 F.3d 804, 807 (11th Cir. 2003). And these four factors are not specific to the Eleventh Circuit—they were adopted from *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972) and are universally applied. *See, e.g., Noble House, LLC v. Certain Underwriters at Lloyd's, London,* 67 F.4th 243, 248 (5th Cir. 2023) (acknowledging the *Bremen* factors); *Fasano v. Guoqing Li,* 47 F.4th 91, 98 (2d Cir. 2022) (acknowledging the *Bremen* factors); *Albemarle Corp. v. Astrazeneca UK Ltd.,* 628 F.3d 643, 651 (4th Cir. 2020) (acknowledging the *Bremen* factors); *Servewell Plumbing, LLC v. Fed. Ins. Co.,* 439 F.3d 786, 789-90 (8th Cir. 2006); *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 497 (9th Cir. 2000) (acknowledging the *Bremen* factors).

that the forum selection clause is valid and mandates transfer of this case to a court in Dane County, Wisconsin.

But although Distefano fails to make arguments that facially fit the four categories of unenforceability (the *Bremen* factors), the Court has examined his arguments to see if any can be made to fit. As it turns out, trying to place Distefano's arguments in the context of unenforceability works as well as trying to fit a square peg in a round hole.

Distefano's first argument for why this forum selection clause is not enforceable is that he is not a party to the MSA. But this argument does not invoke overreaching or fraud, a deprivation of Distefano's day in court, a lost remedy, or public policy implications. And trying to fit Distefano's signatory argument under the broad "enforcement would be unfair or unreasonable" umbrella does not work either. Enforcement of this forum selection clause is neither facially unfair nor unreasonable because nearly every Circuit recognizes times when non-signatories can and should be bound to contracts— particularly when the non-signatory is "closely-related" to the signatory. *See, e.g.*, *Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1299 (11th Cir. 1998) (citing cases from the Seventh, Ninth, and Third Circuit in support of binding non-signatories to forum selection clauses); *Franlink, Inc. v. Bace Servs.*, 50 F.4th 432, 439 (5th Cir. 2022) (collecting cases from the Second, Third, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits recognizing the "closely-related

doctrine").[5]   Distefano and goDesk are extremely closely-related—goDesk is a single-member LLC, and that single member is Distefano.  (Doc. 16-1 at 4-5).  And Distefano personally signed the MSA, even though he was signing on behalf of goDesk.

Distefano's second argument for why the forum selection clause is not enforceable is that the MSA does not apply because this dispute was subject to an oral agreement, not the MSA.  As previously outlined, the MSA's forum selection clause applies to Distefano's causes of action.  And again, Distefano does not connect this argument to any of the *Bremen* factors—fraud or overreaching, deprivation of his day in court, deprivation of a remedy, or contravention of public policy.

And this oral agreement argument does not convince the Court that enforcement of the forum selection clause would be "unfair or unreasonable under the circumstances."   SOW 2 expressly references the Wellward

---

[5] In fact, it is Distefano's position that is unreasonable under the circumstances.  Distefano asks the Court to find that a plaintiff can avoid a forum selection clause simply by signing a contract in a commercial capacity and then suing in a personal capacity.  *Cf. Franlink, Inc. v. Bace Servs.,* 50 F.4th 432, 439 (5th Cir. 2022) ("Case law from the Seventh Circuit gives three reasons why allowing closely-related non-signatories to invoke a forum selection clause is an appropriate equitable theory. First, without such a principle, forum selection clauses could easily be evaded. Second, forbidding non-signatories to invoke, or to be bound, to these clauses would undermine the contribution that forum selection clauses have been praised for—providing certainty in commercial transactions"); *Scher v. Bear Stearns & Co.,* 723 F. Supp. 211, 217 (S.D.N.Y. 1989) (discussing Congress's and the Supreme Court's "stated policy in favor of arbitration" and reasoning "[i]f this Court were to allow plaintiff to avoid arbitration of claims arising out of the customer agreement, simply by naming individual agents of the institutional party as defendants, it would in effect ignore both the particular arbitration clause and the explicit federal policy in favor of arbitration").

platform—the subject of this litigation which Distefano maintains was only the subject of an oral agreement—nineteen times.  To maintain that "the platform development and commercialization" of Wellward was governed only by oral agreement is untenable considering the text of SOW 2 expressly addresses "the platform development and commercialization . . . of" Wellward.  (Doc. 16-5 at 2).

In a variation on a theme, Distefano next argues that he can avoid the forum selection clause in the MSA because he personally owns the intellectual property associated with Wellward—not goDesk.  But again, Distefano does not apply any of the four *Bremen* factors.  Nor is the Court convinced that Distefano's argument makes enforcement of the forum selection clause "unfair or unreasonable under the circumstances."  As discussed, SOW 2—which was signed by goDesk and expressly incorporates the MSA—mentions Wellward nearly twenty times.  And SOW 2 contractually obliges goDesk to "provide consulting services related to platform development and commercialization efforts of the Wellward platform."  (Doc. 16-5 at 2).[6]  Distefano claims that

---

[6] It is also worth considering the relevant excerpt from the MSA concerning ownership of intellectual property: "Except as provided . . . below, all copyrights, patents, trade secrets or other intellectual property rights associated with any ideas, concepts, techniques, inventions, processes or works of authorship developed or created by [goDesk] or its personnel in connection with the performance or the Services under this Agreement (collectively, 'Contract Property') shall belong exclusively to Nordic and shall, to the extent applicable, be considered 'work made for hire' . . . If any element or item of the Contract Property is not a 'work made for hire,' Subcontractor will assign, and shall cause its personnel to assign to Nordic, without any requirement or further consideration, any right, title or interest that Subcontractor and its personnel may have in such Contract Property."

goDesk had no rights to Wellward—but could (and did) contract to "provide oversight during the design and execution of Wellward," "identify and recommend opportunities for evolving [Wellward's] suite of services," and "collaborate with [the] Wellward platform development team." (Doc. 16-5 at 2). This does not carry Distefano's heavy burden to convince the Court that the forum selection clause in the MSA is unenforceable.

And finally, the Court will take a broad look (independent of argument from Distefano) at whether enforcement of this forum selection clause would be "unfair or unreasonable under the circumstances." The circumstances are thus: goDesk is a single member LLC. (Doc. 16-1 at 4-5). That single member is Distefano. (Doc. 16-1 at 4). Distefano personally signed the MSA on behalf of goDesk. (Doc. 16-2 at 12). Distefano personally performed all the work that goDesk had contracted to perform with and for Nordic. (Doc. 16-3 at 2; Doc. 16-5 at 2). And this contracted work *expressly involved Wellward*—including goDesk's contractual obligation to provide "consulting services related to the platform development and commercialization efforts of the Wellward platform." (Doc. 16-5 at 2). Distefano—as goDesk's contract signatory, single member, and actual performer of the work under the MSA, SOWs, and EA with Nordic—was not caught unawares by this forum selection clause. And Distefano's rights and claims—which revolve around the development of,

commercialization of, and ownership of Wellward—are squarely related to SOW 2 and the incorporated MSA.

### C. 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides for change of venue "for the convenience of parties and witnesses, in the interest of justice." Under § 1404(a), a transfer can occur "to any other district or division where it might have been brought or to any district or division to which all parties have consented." Generally, when assessing transfer under § 1404(a), courts consider the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Frey v. Minter,* 829 F. App'x 432, 436 (11th Cir. 2020).

Distefano asserts that under these factors "Nordic cannot meet its heavy burden to prove transfer of this matter [sic] under the *forum non conveniens* doctrine." (Doc. 20 at 15). But Nordic does not have a "heavy burden" because these are the wrong factors. A forum selection clause alters the 28 U.S.C. § 1404(a) analysis. *Atl. Marine Constr. Co.,* 571 U.S. at 63.

Importantly for Distefano, one way the § 1404(a) analysis changes is that "the plaintiff's choice of forum merits no weight" because "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* And another way in which the § 1404(a) analysis changes is that a court "should not consider arguments about the parties' private interests" because "[w]hen the parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64.

So although Distefano spills much ink arguing about the convenience of witnesses, the convenience of the parties, and the other standard § 1404(a) factors, his effort is wasted. What the Court should consider in the modified *forum non conveniens* analysis is: (1) whether an adequate alternative forum is available, (2) whether public factors weigh in favor of dismissal, and (3) whether the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001); *Atl. Marine Constr. Co.*, 571 U.S. at 63-65.

In this case, there is an adequate forum available—the forum the parties contracted for in the MSA. "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be

transferred." *Leon*, 251 F.3d at 1311.  The forum selection clause itself requires that "[t]he sole and exclusive venue for any proceeding arising out of this Agreement shall be a competent court having jurisdiction in Dane Country [sic], Wisconsin." (Doc. 16-2 at 10).  Though not mentioned by the parties, the Court takes judicial notice of the fact that the United States District Court for the Western District of Wisconsin is seated in Dane County.  The Court has no concerns about the Western District of Wisconsin's ability to "assert jurisdiction over the litigation sought to be transferred."

Next, the Court considers the public interest factors.  These factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235 n.6 (1981).

None of Distefano's arguments on these public factors are compelling. The parties disagree on the comparative case processing times of the Western District of Wisconsin and the Middle District of Florida.  As of June 30, 2023, the Western District of Wisconsin takes 29.1 months from filing to trial in a

civil case and the Middle District of Florida takes 34.3 months.[7]  Even if this data moves the needle, it moves it in favor of Wisconsin.  And though Distefano claims this is a Florida case to which Florida law should apply, it appears the primary connection between this case and the state of Florida is that Distefano lives in Florida.  That is simply not enough.

And the final factor bears no weight here.  Under 28 U.S.C. § 1404(a), a federal court can transfer a case to another federal court—dismissal is unnecessary.  *See also Sinochem Int'l Co. v. Malay Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007) ("For the federal court system, Congress has codified the doctrine [of *forum non conveniens*] and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action").  Because this case can be transferred, Distefano will not suffer undue inconvenience or prejudice in "reinstating" his suit in Wisconsin.

**D. Personal Jurisdiction and Discovery**

Finally, Distefano requests in his Response that the Court order jurisdictional discovery.  (Doc. 20 at 20).  Specifically, he requests discovery including "the number and extent of Nordic's Florida clients, revenue from those Florida clients, information about the subsidiary office in Florida and its

---

[7] *Table N/A – U.S. District Courts-Combined Civil and Criminal Federal Court Management Statistics (June 30, 2023)*, UNITED STATES COURTS, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf (last visited Sept. 18, 2023).

officers, employees, and business it conducts in Florida." (Doc. 20 at 20). But this discovery is unnecessary because this case is being transferred. *See Sinochem Int'l Co. v. Malay Int'l Shipping Corp.,* 549 U.S. 422, 431 (2007) ("A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant").

In *Sinochem,* the Supreme Court stated that "[r]esolving a *forum non conveniens* motion does not entail any assumption by the court of substantive 'law-declaring power.'" *Id.* at 433. So jurisdiction is not a threshold issue for this Court. And when the *forum non conveniens* analysis is clear, providing for personal jurisdiction discovery prior to issuing a *forum non conveniens* ruling serves no purpose other than to burden the parties with "expense and delay." *Id.* at 435-36. *See also In re LimitNone, LLC,* 551 F.3d 572, 576-77 (7th Cir. 2008) (applying *Sinochem* and holding that although *Sinochem*'s language speaks only to *forum non conveniens* dismissals, "§ 1404(a) is nothing more than a codification of the traditional *forum non conveniens* rules without the attendant disadvantages of outright dismissal . . . [so] it is appropriate to apply the same rules regarding the necessity of establishing jurisdiction to both").

Accordingly, it is now

**ORDERED:**

Nordic Consulting Partners, Inc.'s ("Nordic") Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) and/or to Compel Arbitration and Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 16) is **GRANTED** in part.

1.   The Clerk is **DIRECTED** to **TRANSFER** this action to the United States District Court for the Western District of Wisconsin.

2.   The Clerk is **DIRECTED** to **MOOT** any pending motions and **TERMINATE** all deadlines that remain on the Fort Myers docket.

3.   The Clerk is **DIRECTED** to **CLOSE** the Fort Myers case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record